UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA MEDICAL FACILITY, et al.,<br><br>　　　　Defendants. | No.  2:18-cv-2314 DB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. He has filed a second amended complaint, which is before the Court for screening.[1]

**I.    Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

////

---

[1] While this is plaintiff's second amended complaint, it is the first pleading that he drafted as a pro se plaintiff. The previous two iterations were submitted by plaintiff's attorney, and each was dismissed with leave to amend for failure to state a claim. (ECF Nos. 6, 18.) Plaintiff has since terminated his attorney's services, and plaintiff is now proceeding in pro per. (See ECF No. 24.)

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

At all times relevant to this action, plaintiff was a state prisoner housed at California Medical Facility ("CMF") in Vacaville, California. He names as defendants CMF Chief Medical Executive Dr. Joseph Bick; CMF Chief Medical Officer Dr. Michelle DiThomas; Dr. Pai; Dr. Lotersztain; Dr. Dhillon; Dr Trimbur; Dr. Roxanne Sanders; "CPS" Ikegbu; Registered Nurse ("RN") Mendoza; RN Harris; Chief Medical Officer Lori Austin; and Medical Staff Does 1-15.

Plaintiff brings constitutional claims under the First Amendment, Eighth Amendment, and Fourteenth Amendment. He also brings state law claims for negligence / medical malpractice and intentional infliction of emotional distress ("IIED"). He seeks declaratory relief, injunctive relief, and damages.

Plaintiff's allegations may be fairly summarized as follows:

In 2007, plaintiff was diagnosed with cervical and lumbar stenosis at the University of California, San Francisco medical facility.[2] At the time, the lumbar stenosis was deemed "mild" and no further treatment was ordered. Plaintiff's medical records were then given to medical staff at CMF.

### A. Onset of Severe Pain

On March 18, 2015, plaintiff began to experience severe pain in his right knee and leg. He went to medical to be seen by a doctor but was told by the intake nurse, RN Mendoza, that no doctor was available that day. She also noted that plaintiff has "a habit of litigation with medical" and that he was already seen by a doctor two weeks prior. Plaintiff pleaded for relief to no avail.

On March 21, 2015, plaintiff received a disciplinary violation for "conduct likely to result in violence" following his interaction with RN Mendoza; this was his first disciplinary report in approximately 20 years. While plaintiff acknowledges that he may have been "talking in a high pitch and his eyes were more likely huge," he attributes that to the severe pain. He denies having acted inappropriately and accuses RN Mendoza of retaliating against him "for exercising his right of medical care and pain/suffering…."

Liberally construing the complaint, Dr. Roxanne Sanders, plaintiff's former primary care physician, examined plaintiff about his complaints of pain. Plaintiff apparently has an antagonistic relationship with Dr. Sanders, whom he once sued successfully in state court and who is alleged to have drafted a falsified CDC-128 chrono. Because of this history, plaintiff accuses Dr. Sanders and RN Mendoza of having a "meeting of the mind" to retaliate against plaintiff. It is not clear, however, what these defendants conspired to do.[3]

---

[2] Spinal stenonis is a narrowing of the spaces within the spine, which can put pressure on the nerves that travel through the spine. There are two types of spinal stenosis: cervical (where the narrowing occurs in the part of the spine in the neck) and lumbar (where the narrowing occurs in the part of the spine in the lower back). See Spinal Stenosis, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited Apr. 20, 2020).

[3] Review of plaintiff's second amended complaint suggests that, while the pages are numbered consecutively, there is a missing paragraph that may include additional allegations relevant to

**B. Placement in CMF's G-1 Hospital Unit**

In 2016, plaintiff was housed in CMF's G-1 hospital unit to recover from a knee surgery. At the same time, he was still suffering severe debilitating pain in his lower back, left leg, calf, and heel.

Dr. DiThomas and RN Harris conducted daily patient reviews of the inmates in the G-1 hospital unit. When they came to plaintiff's assigned dorm, plaintiff cried while telling them of his severe back and leg pain. He pleaded for treatment, saying that he could not properly rest. Without examining plaintiff, Dr. DiThomas said, "you're just old – deal with it … nothing is wrong with you." RN Harris said, "you're always complaining." They then left the room without providing any treatment.

Dr. Pai worked in the G-1 hospital unit periodically. Plaintiff also told this defendant of his severe pain and disrupted sleep. He "continually cried out" for care, increased pain medication, and a referral to a neurology specialty clinic, but Dr. Pai "flatly told [him] no."

At one point, Dr. DiThomas told plaintiff that "if he stopped filing grievances and civil suits, [then] medical staff would receive empathy and you would get their ear and effective care and treatment."

On another unspecified date, plaintiff again begged RN Harris for treatment and a doctor, but RN Harris simply responded, "you're always complaining, and the medical staff is getting [tired] of you." She then walked away. Liberally construing the complaint, this interaction occurred after plaintiff filed an inmate grievance on July 18, 2016, accusing RN Harris of openly discussing his medical issues within earshot of others.

Plaintiff accuses RN Harris, Dr. Pai, and Dr. DiThomas of conspiring to remove plaintiff from the G-1 hospital unit.

---

plaintiff's retaliation claim. Specifically, page 7 ends with ¶ 22 and page 8 begins with ¶ 24. Generally, this can be attributed to a scrivener's error, but ¶ 24 refers to an interaction between plaintiff and RN Mendoza on March 21 involving the disciplinary report ("RN Mendoza supplied Plaintiff a written correct spelling of her name and handed the paper Defendant wrote .. to plaintiff as, she stood behind a partition/barrier, with a guard within feet.") Since § 22 makes no mention of plaintiff's return to medical that day or a second personal interaction between him and RN Mendoza, these allegations appear out-of-context, suggesting a missing paragraph.

4

### C. Placement in CMF's G-3 Chronic Care Unit

Plaintiff was transferred from the G-1 hospital unit to the G-3 chronic care unit. During the intake interview at the G-3 unit, plaintiff told Dr. Doe of his severe pain. Dr. Dhillon later examined plaintiff at the G-3 unit and was told of the disabling pain. Based upon his examination, Dr. Dhillon found no evidence of the lumbar stenosis.

During his time at the G-3 chronic care unit, plaintiff told the rotating Doe physicians and Dr. Bick and Dr. DiThomas of his problems, but each failed to address them.

Dr. Trimbur was plaintiff's primary care physician at the G-3 unit. During one visit, plaintiff told Dr. Trimbur of his severe low back pain. Dr. Trimbur's clinic note included a neurology telemedicine recommendation for a CT scan of plaintiff's cervical and lumbar spine and an order for an EMG. An x-ray "showed C 5-7 and L4-S-1 degenerative changes." Despite this showing, Dr. Trimbur downgraded plaintiff's condition to mild.

Dr. Loterzstain become plaintiff's primary care physician in the G-3 unit after Dr. Trimbur left. Immediately, Dr. Loterzstain decided to reduce plaintiff's opiate / morphine medication because "there is an epidemic in society." When the reduction occurred a week later, plaintiff sought to speak to Dr. Lotersztain about the necessity of the medication due to his condition. Her notes show that she refused to follow the neurology recommendation, stating that it was not indicated and that the cost for lumbar surgery is too high. Plaintiff filed an inmate grievance regarding this denial. In response, Dr. Loterzstain said that Dr. Bick, Dr. DiThomas, Lori Austen[4], and Dr. Ikegbu supported her decision.

As a result of each of the defendants' conduct, plaintiff claims that he suffered "unabated pain, agony and a shock to his nervous system causing intense emotional distress and disrupted rest…" Sec. Am. Compl. 6.

---

[4] Plaintiff includes other, indecipherable allegations against Lori Austin, which are reproduced here: "Defendant Lori Austin (CEO) documented endorsement signing a grievance presents an obstructive narrative masking Lotersztain's and Ikegbu's histronic's and false claim, plaintiff suffers severe pulmonary obstruction an[d] severe coronary disease as … an additional bases for denying plaintiffs referral for surgery." Sec. Am. Compl. ⁋ 75.

**D. Treatment for Stenosis[5]**

On January 10, 2017, plaintiff receive a CT scan of his spine. See Sec. Am. Compl. (ECF No. 21 at 45).

On May 5, 2017, a Dr. McAllister referred plaintiff for an outpatient neurosurgery consultation. Sec. Am. Compl. (ECF No. 21 at 57).

On March 28, 2017, a CT scan was taken at the San Joaquin General Hospital on Dr. Bick's referral. Sec. Am. Compl. (ECF No. 21 at 39-43). It showed "Multilevel chronic degenerative disc disease of the cervical spine with the most significant findings at C5-C6 and C6-C7, causing moderate stenosis of the central canal. There is also mild chronic anterolisthesis of C7 on T1 secondary to degenerative joint disease in facet joints. This is causing mild narrowing of the spinal canal."

On August 7, 2017, plaintiff received a CT scan at the San Joaquin General Hospital during a neurosurgery clinic appointment. Sec. Am. Compl. (ECF No. 21 at 38).

On August 31, 2018, plaintiff had a telemed appointment, after which surgery was recommended due to severe stenosis at L4-S-1. Sec. Am. Compl. (ECF No. 21 at 49). On September 11, 2018, plaintiff was approved for surgery for lumbar laminectomy. Id. (ECF No. 21 at 47). A September 17, 2018, report labeled plaintiff's stenosis as "disabling." Id. (ECF No. 21 at 61). Plaintiff underwent surgery at San Joaquin General Hospital on October 11, 2018. Id. (ECF No. 21 at 64-68).

**IV.   Discussion**

**A. Official v. Individual Capacity Claims**

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. Aholelei v. Department of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state

---

[5] These facts are gleaned from attachments to the second amended complaint. However, plaintiff is informed that the Court has not thoroughly examined the exhibits and, in fact, it is not the Court's role to parse through them to determine the factual basis of his claim(s). See Fed. R. Civ. P. 8.

officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989); accord Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Since plaintiff's claim for medical treatment is prospective, official capacity claims would be allowed.

Plaintiff sues all defendants in their individual capacities, except Dr. Bick, who is also sued in his official capacity. Based on applicable law, plaintiff may pursue damages against all defendants in their individual capacities, but he is limited to prospective injunctive relief against Dr. Bick in his official capacity.

**B. First Amendment Retaliation**

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Under the first element, plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Id. (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.

To prove the second element – retaliatory motive – plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. CDCR, 647 F.3d 870, 882–83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882.

The third element concerns a prisoner's First Amendment right to access the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567–68. Protected speech also includes an inmate's statement of intent to pursue an administrative grievance or civil

1  litigation. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Rhodes, 408 F.3d at 567;
2  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

3        Under the fourth element, plaintiff need not demonstrate a "total chilling of his First
4  Amendment rights," only that defendant's challenged conduct "would chill or silence a person of
5  ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568–69 (citation
6  and internal quotation marks omitted). Moreover, direct and tangible harm will support a
7  retaliation claim even without demonstration of a chilling effect on the further exercise of a
8  prisoner's First Amendment rights. Id. at 568 n.11. "[A] plaintiff who fails to allege a chilling
9  effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse
10 action. Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 568 n.11).

11       Regarding the fifth element, the Ninth Circuit has held that preserving institutional order,
12 discipline, and security are legitimate penological goals that, if they provide the motivation for an
13 official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.
14 1994); Rizzo, 778 F.2d at 532. When considering this final factor, courts should "'afford
15 appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate
16 penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v.
17 Conner, 515 U.S. 472, 482 (1995)). Plaintiff bears the burden of pleading and proving the
18 absence of legitimate correctional goals for defendant's challenged conduct. Pratt, 65 F.3d at 806.
19 A plaintiff must prove that the alleged retaliatory motive was the but-for cause of the challenged
20 actions. Hartman v. Moore, 547 U.S. 250, 260 (2006).

21       Plaintiff's retaliation claim is premised on what he believes is a link between his First
22 Amendment activity against medical staff and the alleged denial of medical care. But the facts
23 alleged do not suggest retaliation on the part of several of the named defendants. For example,
24 RN Mendoza is accused of having denied plaintiff access to a doctor in March 2015 because
25 plaintiff has "a habit of litigation with medical." However, plaintiff also claims RN Mendoza
26 informed him that no doctors were available for plaintiff to be seen that day. He then further
27 suggests that he was in fact later seen by Dr. Sanders regarding his complaints of pain. These
28

allegations do not suggest retaliation on the part of either RN Mendoza or Dr. Sanders. It also remains unclear what adverse action Dr. Sanders took that would support a retaliation claim.

Only plaintiff's allegations against Dr. DiThomas and RN Harris pass the low bar for stating a claim. Dr. DiThomas is alleged to have said, "if [plaintiff] stopped filing grievances and civil suits medical staff would receive empathy and [he] would get their ear and effective care and treatment." Having affirmatively linked plaintiff's grievances with the quality of medical care and treatment, the Court concludes that plaintiff states a retaliation claim against Dr. DiThomas. In addition, the timing of plaintiff's grievance against RN Harris and this defendant's denial of care, while also accusing plaintiff of "always complaining," suffices to state a claim.

**C. Eighth Amendment Medical Indifference**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause

10

of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Plaintiff adequately alleges that Dr. DiThomas, RN Harris, Dr. Pai, and Dr. Bick were deliberately indifferent to his serious medical needs by completely ignoring his complaints of severe and debilitating pain. He also adequately alleges that Dr. Loterszstain reduced plaintiff's pain medication and denied neurology referrals for reasons wholly separate from plaintiff's medical needs (the opioid epidemic and cost factors).

Plaintiff's remaining allegations do not state a medical indifference claim. That Dr. Dhillon examined plaintiff and found no evidence of lumbar stenosis does not, without more,

11

state a claim. Neither do plaintiff's allegations against Dr. Trimbur, who downgraded plaintiff's stenosis to mild after reviewing an x-ray. Finally, plaintiff's allegations against Lori Austin, Ikegbu, and the Doe defendants are too vague, confusing, and/or conclusory to proceed.[6]

### D. Conspiracy

At several points in the complaint, plaintiff accuses various defendants of having a "meeting of the minds" to violate plaintiff's rights. To state a claim for conspiracy under section 1983, plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). "Conspiracy" is not a stand-alone claim. A conspiracy "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (citations omitted).

Plaintiff fails to state a cognizable claim for conspiracy. He does not demonstrate that any individual defendant conspired, how such defendant conspired, and how the conspiracy led to a deprivation of his constitutional rights. See Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).

### E. Negligence / Medical Malpractice

Under California law, "[m]edical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. Barris v. County of Los Angeles 20 Cal.4th 101, 108, n.1 (1999). Thus, in 'any medical malpractice action, the plaintiff must establish: '"(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's

---

[6] Related to the provision of medical care, plaintiff also asserts "a fourteenth Amendment Due Process right to be protected by Defendants while under the care, custody and control of defendants." Sec. Am Compl. 16. However, where a more specific constitutional provision addresses the alleged harm, that provision will be the source of the Court's analysis, not a generalized substantive due process claim. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

12

negligence." [Citation.]'" Hanson v. Grode, 76 Cal.App.4th 601, 606 (1999)." Powell v. Kleinman, 151 Cal. App. 4th 112 (2007).

Based on plaintiff's allegations, the Court concludes that he states a cognizable medical malpractice claim against only Dr. DiThomas, RN Harris, Dr. Pai, Dr. Bick, Dr. Loterszstain, Dr. Dhillon, and Dr. Trimbur.

### F. Intentional Infliction of Emotional Distress

To establish an IIED claim, a plaintiff must show the following three things: (1) the defendant engaged in the requisite culpable conduct (i.e., "outrageous conduct") with the requisite culpable intent (i.e., intention to cause or reckless disregard of the probability of causing emotional distress); (2) the plaintiff suffered the requisite damage (severe emotional suffering); and (3) actual and proximate causation of the injury. See Wong v. Jing, 189 Cal. App. 4th 1354, 1376 (2010).

Plaintiff claims that as a result of the defendants' conduct, he suffered "intense emotional distress." But "severe emotional distress," for purposes of an IIED claim, is "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Jackson v. Mayweather, 10 Cal. App. 5th 1240, 1265 (2017) (citation and internal quotations omitted). "'[T]he requisite emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry.'" Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1614 (2012). "[T]he intensity and duration of the distress are factors to be considered in determining its severity." Id. (citation omitted). The court determines whether, on the evidence, severe emotional distress can be found; the jury determines "whether, on the evidence, it has in fact existed." Fletcher v. Western Nat. Life Ins. Co., 10 Cal. App. 3d 376 (1970) (internal quotations and citation omitted).

The Court does not find that plaintiff meets this requisite standard.

### V. Conclusion

Plaintiff's second amended complaint states (1) a First Amendment retaliation claim against Dr. DiThomas and RN Harris, (2) an Eighth Amendment medical indifference claim against Dr.

DiThomas, RN Harris, Dr. Pai, Dr. Bick, and Dr. Loterszstain, and (3) a state law medical malpractice claim against Dr. DiThomas, RN Harris, Dr. Pai, Dr. Bick, Dr. Loterszstain, Dr. Dhillon, and Dr. Trimbur.

The remaining claims are not cognizable as pled. The Court will grant plaintiff the opportunity to file a third amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his second amended complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment).

If plaintiff does not wish to file a third amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claims. The undersigned will then recommend that his remaining claims be dismissed.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted). Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

////

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send plaintiff a blank civil rights complaint form;

2. Within thirty days from the date of service of this order, plaintiff must:

   a. File a third amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claims found to be cognizable in this order; or

   c. Notify the Court in writing that he wishes to stand on his second amended complaint as written; and

2. If plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: May 4, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/ande2314.scrn 2AC